1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No.  1:15-cr-00049-LJO-SKO

12                      Plaintiff,

13           v.                                     ORDER DENYING DEFENDANT'S
                                                    MOTION FOR COMPASSIONATE
14    PASCUAL GONZALES MAGALLANES,                  RELEASE

15                      Defendant.                  (Doc. No. 79)

16

17

18           Pending before the court is defendant Pascual Gonzales Magallanes's motion for

19    compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on

20    defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus

21    ("COVID-19") outbreak.  (Doc. No. 79.)  For the reasons explained below, defendant's motion

22    will be denied.

23                                      **BACKGROUND**

24           On September 21, 2015, defendant pled guilty to possession with the intent to distribute

25    50 grams or more of a mixture or substance containing a detectable amount of methamphetamine

26    and 5 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) as

27    charged in Count 3 of the indictment in this case.  (Doc. Nos. 32, 43.)  According to the

28    presentence report prepared in connection with his sentencing, defendant Magallanes was

                                                  1

1    involved in the distribution of a large quantity of methamphetamine and had a prior criminal

2    record that included felony and several misdemeanor convictions involving controlled substances.

3    (Presentence Report ("PSR") ¶¶ 22–32.)  It was determined that pursuant to the U.S. Sentencing

4    Guidelines, defendant's total offense level was 31 and his criminal history placed him in category

5    III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of

6    between 135 and 168 months.  (*Id.* at 4.)  The U.S. Probation Office recommended a sentence of

7    135 months.  (*Id.*)  On December 14, 2015, District Judge Lawrence J. O'Neill varied downward

8    from the advisory guideline range and sentenced defendant to 121 months of imprisonment,

9    followed by a 48-month term of supervised release.  (Doc. Nos. 68, 71.)  Defendant is currently

10   serving his sentence at the U.S. Bureau of Prisons' ("BOP") Sheridan FCI.  *Find an inmate*,

11   FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited October 27, 2021.)

12   His projected release date is October 7, 2022 with the application of good time credits.  To date,

13   defendant has served approximately 79 months of his 121-month sentence.

14        On June 22, 2021, defendant filed the pending motion for compassionate release pursuant

15   to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 79.)  On July 19, 2021, the government filed its

16   opposition to the motion.  (Doc. No. 90.)  Defendant filed his reply on July 26, 2021.  (Doc. No.

17   95.)

18                                    **LEGAL STANDARD**

19        A court generally "may not modify a term of imprisonment once it has been imposed."  18

20   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

21   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

22   be modified by a district court except in limited circumstances.").  Those limited circumstances

23   include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

24   3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

25   motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)

26   (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

27   compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the

28   FSA specifically provides that a court may

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)    extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

3

1        The policy statement with respect to compassionate release in the U.S. Sentencing

2    Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."

3    U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*,

4    451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G.

5    § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement

6    was issued before Congress passed the FSA and authorized defendants to file compassionate

7    release motions).  However, the Ninth Circuit has held "that the current version of U.S.S.G.

8    §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by

9    a defendant."  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the

10   Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A)

11   motions filed by a defendant."  *Id.*  The Ninth Circuit clarified that "[t]he Sentencing

12   Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for §

13   3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *Id.* (citing *United States v.*

14   *Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

15       In so holding, the Ninth Circuit joined the five other circuits who had addressed this issue

16   at the time and had unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

17   motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

18   defendant."  *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

19   ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

20   _____

21   *Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has
     acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

22   released to home confinement after serving less than half his sentence from a facility that reported
     no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*

23   *Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.
     com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the

24   prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
     prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*

25   *COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-

26   manafort-released-from-prison-amid-covid-19-fears.

27   [3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
     U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person

28   or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release.  District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts:  There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

1

**ANALYSIS**

2          As district courts have summarized, in analyzing whether a defendant is entitled to

3 compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

4 defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust
> administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a
> district court may grant compassionate release only if "extraordinary
> and compelling reasons warrant such a reduction" and "that such
> reduction is consistent with applicable policy statements issued by
> the Sentencing Commission. *Id.* Third, the district court must also
> consider "the factors set forth in Section 3553(a) to the extent that
> they are applicable." *Id.*

10 *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

11 LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74;

12 *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

13 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

14 "consistent with" the sentencing factors set forth in §3553(a)).

15 **A.      Administrative Exhaustion**

16          Defendant reports that he submitted a formal request for compassionate release to the

17 Administrative Remedy Coordinator at FCI Sheridan on September 10, 2020. (Doc. No. 79-5 at

18 1.) His request was rejected on September 28, 2020. (*Id.* at 2.) The government agrees that

19 defendant has exhausted his administrative remedies. (Doc. No. 90 at 4.) Because a failure to

20 exhaust administrative remedies where such is required is normally viewed as an affirmative

21 defense, the government's concession on this point is dispositive. Therefore, the court will

22 address the merits of defendant's motion.

23 **B.      Extraordinary and Compelling Reasons**

24          "Extraordinary and compelling reasons" warranting compassionate release may exist

25 based on a defendant's medical conditions, age and other related factors, family circumstances, or

26 "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other

27 reasons" was included in the policy statement at a time when only BOP could bring a

28 compassionate release motion, courts have agreed that it may be relied upon by defendants

6

bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

1    mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

2    his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In

3    determining a defendant's projected release date, courts may take into account any "good time

4    credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

5    U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal.

6    2020).

7         Here, defendant argues that extraordinary and compelling reasons warranting his

8    compassionate release exist due his heart condition, obesity, hypertension, and mental health

9    conditions.  (Doc. No. 79 at 2.)  To qualify for compassionate release, defendant must

10   demonstrate that he is suffering from some "serious" medical condition "that substantially

11   diminishes [his] ability . . . to provide self-care" at Sheridan FCI where he is imprisoned and that

12   the medical condition is one "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13,

13   cmt. n.1 (A)(ii).  Defendant has been diagnosed with hypertension and is receiving medication for

14   such condition.  (Doc. Nos. 79 at 2; 94 at 17.)  Defendant also suffers from anxiety and is

15   currently taking anti-anxiety medication (Doc. No. 94 at 18), and he has recently suffered from

16   heart palpitations.  (*Id*. at 28.)  Finally, defendant represents that his BMI is 31.9 (*Id*. at 18, 20),

17   which indicates that he is obese.[5]  *Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND

18   PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_

19   calculator/bmi_calculator.html (last visited October 27, 2021).

20        Defendant's obesity and hypertension may place him at a greater risk of suffering a severe

21   illness if he were to contract COVID-19.  *See generally People with Certain Medical Conditions*,

22   CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-

23   ncov/need-extra-precautions/people-with-medical-conditions.html (last visited October 27, 2021).

24   The government concedes as much but argues that extraordinary and compelling reasons for

25   _____

26   [4]  Because defendant is only 51 years old (Doc. No. 94 at 1), these age and age-related factors are
     irrelevant to the court's disposition of the pending motion.

27   [5]  Though defendant's BMI was recorded as 35.4 in September 2020 (Doc. No. 94 at 112,) it was
28   more recently calculated as 31.9 on June 22, 2021.  (Doc. No. 94 at 2.)

1    defendant's compassionate release do not exist because defendant is now fully vaccinated.  (Doc.

2    No. 94 at 167.)

3         The evidence before the court establishes that defendant received his first dose of the

4    Moderna vaccine on February 26, 2021 and his second dose on March 25, 2021.  (Doc. No. 44-1

5    at 73.)  Because more than two weeks have passed since receiving his second dose, defendant is

6    now fully vaccinated against the virus.  *See COVID-19: When You've Been Fully Vaccinated*,

7    CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-

8    ncov/vaccines/fully-vaccinated.html (last visited October 27, 2021).  At this point, the medical

9    evidence strongly suggests that fully vaccinated individuals, like defendant, are reasonably well-

10   protected against becoming severely ill or dying from COVID-19.[6]  *See United States v. Willis*,

11   3:15-cr-00465-BR, 2021 WL 2179256, *3–4 (D. Ore. May 27, 2021) (concluding that federal

12   prisoners who have been fully vaccinated but suffer from chronic medical conditions that would

13   put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and

14   compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-

15   cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal

16   court of appeal appears to have considered the question, district courts across the country,

17   including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts

18   any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United*

19   *States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar.

20   29, 2021) (finding no extraordinary and compelling reasons for compassionate release where

21   defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D.

22   Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination

23   significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue

24   /////

25

26   [6]  Based upon some news reports, it also appears rare for a vaccinated individual to both contract
     the virus and to suffer a severe illness as a result.  *See* Tucker Reals, *Study Finds Low Rate of*
27   *COVID-19 "Breakthrough" Infections, Fewer Symptoms in Vaccinated People*, September 2,
     2021, https://www.cbsnews.com/news/covid-breakthrough-infections-vaccine-rate-symptoms-
28   study/ (last visited October 27, 2021).

1   have reached similar conclusions.").[7]

2          Based on the medical evidence before the court, defendant is not "suffering from a serious

3   physical . . . condition" for purposes of compassionate release.  *See* U.S.S.G. § 1B1.13, cmt. n.1

4   (A)(ii).  Therefore, his motion will be denied on this basis.

5   **C.**       **Consistency With the § 3553(a) Factors**

6          Because the pending motion fails to establish extraordinary and compelling reasons

7   justifying compassionate release, the court need not address whether any reduction in defendant's

8   sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. §

9   3553(a).  Nonetheless, the undersigned notes that defendant was sentenced to a 121-month term

10   of imprisonment, which was well below the low end of the applicable guideline range (135 to 168

11   months) in this case.  The court concludes that the granting of defendant's motion would not

12   adequately reflect the seriousness of defendant's offense of conviction, promote respect for the

13   law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See* § 3553(a);

14   *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev.

15   May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6

16   (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to

17   consider in any compassionate release analysis, with a longer remaining sentence weighing

18   against granting any such motion." (citation omitted)).

19          **CONCLUSION**

20          For the reasons explained above, the court concludes that defendant has not demonstrated

21   that "extraordinary and compelling reasons" exist warranting his compassionate release from

22   prison.  Moreover, the court finds that the granting of release at this time is not consistent with

23   /////

24   _____

25   [7]  Moreover, as of late October 2021, it appears that the Bureau of Prisons is reporting that only
one prisoner and three staff members are currently suffering from active infections with the virus
26   causing COVID-19 at FCI Sheridan.  *See* COVID-19, FEDERAL BUREAU OF PRISONS,
https://www.bop.gov/coronavirus/ (last visited November 16, 2021).  While the undersigned does
27   not necessarily accept these reported numbers at face value in light of current CDC guidelines
with respect to both testing and the manner of counting "active cases," there is also no evidence
28   before the court challenging those reported numbers in this case.

consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, defendant's motion for compassionate release (Doc. No. 79) is denied.

IT IS SO ORDERED.

Dated:   **November 16, 2021**

_____
UNITED STATES DISTRICT JUDGE